SAVOY, Judge.
Defendants appealed from a judgment of the district court awarding plaintiff a money judgment in the sum of $907.
The trial judge in a well considered opinion discussed the evidence in detail and properly disposed of the issues involved. We have therefore adopted his reasons as our own.
“In her petition, as amended, the plaintiff prays for judgment in the total sum of $2800 against the defendant's, in solido, for trespassing upon plaintiff’s land and removing therefrom 13,000 cubic yards of sand. The plaintiff alleges that the defendant, Joseph Vance Thompson, illegally claiming to be the owner of said land, did negotiate with the defendant, L. H. Bossier, Inc., for the sale of such sand which was removed from plaintiff’s land by the said L. H. Bossier, Inc. The plaintiff alleges that she is entitled to damages in the sum of $1500 for the illegal trespass and slander of her title, plus the sum of $1300 representing the value of the 13,000 cubic yards of sand removed, making a total of $2800 for which she prays judgment.
“In his answer the defendant Joseph Vance Thompson denies that the sand was removed from the land of plaintiff and alleges that the land from which the sand was removed is owned by him. As developed by the pleadings and trial of this case the sole issue is the location of the dividing line between the lands of Mrs. Cruikshank and the lands of Thompson. It is Thompson’s contention that this line lies east of the pit from which the sand was taken, while it is the contention of the plaintiff that the line lies to the west of the pit.
“In her supplemental and amended petition the plaintiff described her property as follows:
“ ‘A certain tract of land, situated in the Parish of Rapides, State of Louisiana, and located about fifteen (15) miles above the City of Alexandria, and being Lot Two (2) of the partition between the heirs of Smith Gordon, dated February 11, 1868, before W. W. Whittington, Jr., Notary Public, as per Conveyance Book “B”, Page 135, records of this parish; said property being bounded in front by Bayou Rapides, above by property formerly of Kincaid, now the property of Joseph Vance Thompson, below by property formerly belonging to Grundy Cooper, and in the rear by Unknown owners: and containing 300 acres, more or less, in Sections 64 and 79, Township 4 North, Range 2 West, bounded in front by Bayou Rapides, above by property formerly owned by Kincaid, below by property of Grundy Cooper, and in the rear by Bayou Rapides, above by property formerly owned by Kincaid, below by property of Grundy Cooper, and in the rear by Section 62, Township 4 North, Range 2 West, being Lot 2 of the partition had between the heirs of Smith Gordon on February 11, 1868, recorded in Conveyance Book “B’’, page 135, of the Records of Rapides Parish, Louisiana.’
“The plaintiff has alleged that her chain of title to the above described property is as follows:
*208 “ ‘1. United States to Smith W. Gordon, Patent dated August 20, 1913, recorded June 26, 1914, Conveyance Book 68, page 95. Conveying: Section 79, Township 4 North, Range 2 West, Rapides Parish, Louisiana.
“ ‘2. Private claim of Levi Wells, B 317 (Patent not recorded). Conveying: Section 64, Township 4 North, Range 2 West, Rapides Parish, Louisiana.
“ ‘3. Partition between the heirs of Smith Gordon dated February 11, 1868, Conveyance Book ‘B”, Page 135, under which Mrs. Martha J. Texada received Lot 2, being the lower portion of Woodlawn Plantation.
“ ‘4. Sheriff’s sale, Mrs. Martha Texada to M. J. Dunnam, dated October 6, 1885, recorded October 17, 1885, Conveyance Book “I”, Page 204.
“ ‘5. Exchange, Mrs. Martha J. Texada to Milton J. Dunnam, dated December 14, 1885, recorded December 17, 1885, Conveyance Book “I”, page 277. Conveying: Remaining portion of Lot 2, Gordon Partition.
“ ‘6. Donation, Milton J. Dunnam to Mrs. Julia E. Cruikshank, dated July 7, 1890, recorded April 25, 1891, Donation Book “A”, Page 33.
“ ‘7. Judgment in Probate No. 1506, entitled “Succession of Julia E. Cruikshank,” dated March 22, 1912, recorded March 23, 1912, Conveyance Book 61, Page 136. In this proceeding Mrs. Alice Cordelia Cruikshank was recognized as Universal Legatee and placed in possession of property described in Article 1, of this amended petition.
“ ‘8. Compromise Judgment, Suit No. 9455, dated April 16, 1915, by which Mrs. Alice Cordelia Cruikshank was recognized as owner of that portion of Section 79, Township 4 North, Range 2 West, lying within the lower portion of Woodlawn Plantation.’
“In his answer, the defendant Thompson has described his property as follows:
“ 'A certain piece, parcel or lot of ground together with all buildings and improvements thereon, and all rights, ways and privileges thereto appertaining, being, lying and situated in Sections 79, 65 and 64, Township 4 North, Range 2 West, Rapides Parish, Louisiana, and being more particularly described as follows:
“ ‘Begin at the Southwest corner of Section 79, Township 4 North, Range 2 West (T4N, R2W), run thence 24 degrees 15 minutes West with the Easterly line of land now or formerly owned by William. C. Hudson 6,187.9 feet to a point; thence ran North 66 degrees 1 minute East 1,438.7 feet to a point in the Westerly line of lands now or formerly belonging to Alice Cordelia Cruikshank; thence with said Westerly line South 29 degrees 0 minutes East 6,970.7 feet to a point; thence south 39 degrees 0 minut.es West 181.5 feet to a point marking the Southeast corner of Section 79, Township 4 North, Range 2 West; thence run West 2,042 feet to Southwest Quarter (SW)4) corner of Section 79.
“ ‘And all property or land lying, being and situated South of Bayou Boeuf or Kincaid Canal in the above numbered Sections 64, 65 and 79 in Township 4 North, Range 2 West of Rapides Parish, Louisiana, as per deeds of record in Conveyance Book 340; Folio 183; 340, Folio 283, Conveyance Book 436, Folio 26; and Conveyance Book 522, Folio 511 of the Records of Rapides Parish, Louisiana.’
“The common author in title of both plaintiff and defendant was Smith W. Gordon whose heirs, on February 11, 1868, entered into an act of partition. Starting with this act of partition the defendant, Thompson, in his answer gives the chain of title to his property as follows :
“ ‘(g) Act of Partition of heirs of Smith W. Gordon, deceased, to Jefferson Wells Gordon, dated February 11, 1868, filed *209 February 24, 1868, in Conveyance Book “B”, Page 135, Rapides Parish, Louisiana.
“‘(h) Jefferson Gordon to Robert Kin-caid, Act of Sale dated April 1, 1885, recorded in Conveyance Book “H”, Folio 563, Rapides Parish, Louisiana.
“ ‘(i) Heirs of Smith W. Gordon, Jefferson W. Gordon, Martha J. Texada, Jeannette Ogdon to Robert Kincaid dated November 25, 1892, Conveyance Book B., Folio 135, Records of Rapides Parish, Louisiana.
“‘(j) Affidavit of Dr. Smith Gordon dated December 8, 1892.
‘“(k) Robert Kincaid to Winnfield H. Belgard, Peter C. Belgard and John N. Belgard, Book “A” of Donations, Folio 334.
“ ‘(l) United States of America to Smith Waddel Gordon, dated June 20, 1914, Conveyance Book 68, Folio 95, records of Ra-pides Parish, Louisiana.
“ ‘(m) Alice Cordelia Cruikshank to Robert Kincaid, dated October 18, 1913, Conveyance Book 65, Folio 28, records of Rapides Parish, Louisiana.
“ ‘(n) John N. Belgard to Peter C. Bel-gard and William B. Belgard, Conveyance Book 93, Page 156, records of Rapides Parish, Louisiana, dated December 23, 1919.
‘“(o) Charles Waters Ward to Robert Kincaid, et al, Conveyance Book 112, Folio 264, records of Rapides Parish, Louisiana.
“ ‘(p) Probate of Will of Robert Kincaid, Conveyance Book 170, Folio 215, records of Rapides Parish, Louisiana, in proceedings number 3599 of Ninth Judicial District Court.
'“(q) Probate proceedings number 4994, Phelnise Kincaid to Peter C. and William B. Belgard.
'“(r) William B. Belgard and Peter C. Belgard, et al, to United States of America, proceedings number 937 of the District Court of the United States of America, Western District of Louisiana.
“‘(s) United States of America to William B. and Peter C. Belgard, Cash Sale, dated April 22, 1947, Conveyance Book 342, Folio 265, of the records of Rapides Parish, Louisiana.
“ ‘(t) Probate of Will of Peter C. Belgard, proceedings number 8816 on the docket of the Ninth Judicial District Court.
“ ‘(u) William B. and Peter C. Belgard to Vance Thompson, Acts of Sale, recorded in Conveyance Book 340, Folio 183; 340 Folio 283; 436, Folio 26; and Conveyance Book 522, Folio 511 of the Records of Ra-pides Parish, Louisiana.’
“It is noted that the last instrument which is listed by the defendant in his chain of title is a correctional and quit claim deed from William B. Belgard to Vance Thompson dated February 12, 1958, which was five days after this suit was filed on February 7, 1958. The description in this correction deed adds to the descriptions contained in previous deeds from the Belgards to Thompson the last paragraph of the above description of the Thompson property.
“During the trial of this case, Mr. L. J. Daigre, a civil engineer and licensed surveyor, testified that during the month of October, 1957, the defendant, Mr. Thompson, and Mr. James A. Cruikshank, representing the plaintiff, came to Mr. Daigre’s office and requested that he survey the boundary line between the property of the plaintiff and that of defendant with the understanding that the plaintiff and the defendant would each pay one-half of the cost of the survey. Pursuant to this request Mr. Daigre, through his employee, Mr. Robert Sylvester, went out to the site to make the survey. Sylvester testified that he took with him a copy of an old plat which had been made by R. W. Bring-hurst, surveyor, in 1892 which showed this same dividing line between the properties of the plaintiff and the defendant but *210 showed the bearing of the line as North 29 degrees West (instead of North 29 degrees 22 minutes West as Sylvester later established the line). Sylvester testified that on the property he met the defendant Thompson, Mr. Andries, representing the plaintiff, and Mr. William Belgard, who according to the evidence is 77 years of age and has lived on property adjoining the plaintiff and defendant for approximately 50 years and from whom the defendant bought his property. Sylvester testified that with the assistance of Thompson, Belgard, and Andries, he located the buggy axle which is located at the Southwest corner of Section 79, Township 4 North, Range 2 West, as shown on Daigre’s plat which is marked P-8 and filed in evidence. Using this buggy axle as a point of beginning Sylvester testified that he ran thence East along the Township line (the magnetic bearing is north 89 degrees 30 minutes east) a distance of 30.94 chains which was the distance shown on Bringhurst’s plat and Sylvester then set a temporary stake. From this point Sylvester ran approximately north 38 degrees 30 minutes east along Cruikshank’s south line and he found the one-half inch iron stake located on the north bank of Kincaid canal as shown on plat marked P-8. Sylvester testified that he had with him a plat which showed that Cruikshank’s south line had a bearing of north 38 degrees 30 minutes east so he then ran back along this line (which is also the south boundary line of Section 79) a distance of 40.85 chains to the Township line and set there a iron pipe. Sylvester testified that he then used Bringhurst’s plat and ran North 38 degrees 30 minutes East a distance of 2.75 chains as shown on Bringhurst’s plat to a point where he placed a iron pipe to mark the southern end of the dividing line between Thompson and Cruikshank. Sylvester testified further that then using the bearing North 29 degrees west, which is shown on the old Bring-hurst Plat, lie ran the dividing line between Thompson and Cruikshank but when he reached the north end he was about 50 feet east of the fence which ran along the east side of the lane or road which was recognized by Mr.. Thompson, Mr. Belgard, Mr. Andries and everyone else in the community, as well as everyone who has testified in this law suit as being the dividing line between the properties in question on the north side of Kincaid Canal. Since everyone agreed that the fence along the east side of the road was the dividing line north of the canal and since all of the plats and all of the descriptions showed the boundary line between these properties in question as being a straight line leading from Bayou Rapides on the front, back to the South boundary line of Section 79 in the rear, Sylvester then simply went back to the south end of the boundary line which he had established and marked with a ^4" iron pipe and ran a straight line from that point to the fence along the east side of the road shown on the north side of Kincaid Canal and placed at the north end of the dividing line a i/£" pipe as is shown on the plat marked P-8. The bearing of the final line as run by Sylvester had a magnetic reading of North 29 degrees 22 minutes west instead of the North 29 degrees west which is shown on the old Bringhurst plat. This rather lengthy explanation is given in order to show the exact manner in which the boundary line as shown on the plat marked P-8 and filed in evidence was located.
“There is no question but that the Thompson property is a portion of Lot 1 and the Cruikshank property is Lot 2 of the partition amongst the heirs of Smith W. Gordon dated February 11, 1868, and recorded in Conveyance Book “B”, page 135 of the Records of Rapides Parish, Louisiana. In said act of partition these two lots are described as follows:
“ ‘The Woodlawn Plantation is divided into two equal parts of 285 acres each.
“ ‘The upper part thereof, together with a tract of pine land containing about six hundred acres, constitutes lot number one.
“ ‘The lower part of the Woodlawn planation together with the pine woods *211 house and land attached thereto, the steam engine and a lot or lots in square number 20 of the upper suburb of the Town of Alexandria, constitues Lot number 2.
“ ‘The dividing line of these two parts of the woodland tract starts at the gate of the gin on the front, and so runs as to separate it into two equal parts as aforesaid.’
“Unfortunately there is no plat or other evidence in the record to show ‘the gate of the gin on the front’ or to show the line that was run from the gate of the gin back through the property as to divide the pine woods land. However, it is apparent from the deeds and other instruments in the Thompson chain of title that a survey was made by R. W. Bringhurst on and before November 14, 1892. In the deed from Jefferson Wells Gordon to Robert Kincaid dated April 1, 1885, and recorded in Conveyance Book ‘H’, Page 563, Thompson’s ancestor in title, Mr. Robert Kincaid, acquired the property described therein as follows:
“ ‘A certain tract of land or plantation situated lying and being on Bayou Rapides in the Parish of Rapides, State of Louisiana, together with all buildings, improvements thereunto appertaining and all rights, ways and privileges thereunto belonging, fronting on the right descending bank of said Bayou Rapides, bounded above by lands of Helena Flournoy, below by those of Mrs. Martha J. Texada, and in the rear by property of Graham, and property of the Long estate as per Bringhurst map of Rapides Parish and containing the quantity of 300 acres and being the same property acquired by this vendor by inheritance from his deceased father, Smith Gordon, and by voluntary partition had with his co-heirs on the 11th of February, 1868, before W. W. Whittington, Jr., Notary Public duly of record in Conveyance Book “B”, Folio 135, and 136, in the Recorder’s office of this Parish and State in which said partition this vendor drew and was allotted number 1, being the upper part of Woodlawn Plantation.’
“In probate proceedings number 3599 entitled Succession of Kincaid v. Probate of Will, the judgment dated July 9, 1930, recognizing Mrs. Phelonise Kincaid as universal legatee of Robert Kincaid, referred to a survey made by R. W. Bringhurst in 1892 in the following description of the property:
“ ‘An undivided one-half interest in and to that certain cotton plantation being the upper portion of Woodlawn Plantation, lying on the right descending bank of Bayou Rapides, bounded above by lands of Helena Flournoy, below by lands of Martha J. Texada and in the rear by lands of estates of C. Mason Graham and C. M. Long, being composed of portions of Sections 64, 65 and 79, Township 4 North, Range 2 West, and a portion of Section 39, Township 4 North, Range 3 West and described particularly as beginning at the southwest corner of Section 79, Township 4 North, Range 2 West, thence North 24 degrees 15 minutes west, 174.15 chains to bank of Bayou Rapides; beginning again at said Southwest corner of said Section 79, Township 4 North, Range 2 West; thence east 30.94 chains; thence north 39 degrees east 2.75 chains; thence north 29 degrees west 148.60 chains to bank of Bayou Rapides; thence up said Bayou in a northwesterly direction to the point first established on said bayou bank, according to a survey and plat thereof made by R. W. Bringhurst, Parish Surveyor, on the 14th day of November, 1892, containing in all 386.04 acres more or less, together with all buildings and improvements thereon and all rights, ways and privileges thereto belonging or appertaining.’
“These descriptions which appear in Thompson’s chain of title show without question that a survey or surveys were made by R. W. Bringhurst as early as 1892 showing the boundary line which is in dispute in these proceedings as running from the south line of Section 79 on a bearing North 29 degrees west, a distance of 148.60 chains all the way to the bank of Bayou Rapides. It is apparent that at one time this so called ‘Bringhurst Line’, was shown *212 on a plat of survey and was recognized by all of the parties concerned as being the dividing line between lot 1 and lot 2 of the Smith W. Gordon partition, which was entered into back in 1868.
“One of the positions which has been taken by the defendant in these proceedings is that in the pine woods land lying south of Kincaid canal there is still evidence in the nature of old blazes, showing the location of the old Bringhurst line. Mr. William Belgard, Thompson’s ancestor in title, who is now 77 years of age and has lived on these properties for over SO years, testified that his older brother showed him the location of the Bringhurst line and that all his life he had known of its location and that the old Bringhurst line is approximately 60 feet to the east of the boundary line which was run by L. J. Daigre in 1957 and is shown on the plat marked P-8 and filed in evidence by the plaintiff. The defendant also points out that the bearing shown on the Bringhurst line is north 29 degrees west whereas the bearing shown on Daigre’s boundary line is north 29 degrees 22 minutes west and the defendant argues that therefore Daigre’s line cannot be accepted.
“The plaintiff answers this argument by pointing out that on October 18, 1913, Mrs. Alice C. Cruikshank in consideration of $1.00 executed a quitclaim deed to Robert Kincaid recorded in Conveyance Book 65, Page 28 of the Records of Rapides Parish, Louisiana, and conveying all of Mrs. Cruikshank’s interest in Section 79, Township 4 North, Range 2 West, to the said Robert Kincaid. However, shortly thereafter Mrs. Alice C. Cruikshank filed Civil Suit No. 9455 against Robert Kincaid apparently seeking to annul and set aside the quitclaim deed. Unfortunately the suit record in these proceedings No. 9455 is missing from the records of Rapides Parish, Louisiana. The Court tried to find these proceedings but was unable to do so. However, on December 21, 1914, a compromise judgment was entered into by and between the plaintiff and the defendant in these proceedings and this judgment was recorded on January 12, 1915, in Conveyance Book 69, page 126 of the Records of Rapides Parish, Louisiana. This compromise judgment first of all annuls and sets aside the quitclaim deed which was executed by Mrs. Cruikshank to Robert Kincaid on October 18, 1913, conveying all of her interest in Section 79. The compromise judgment further recognizes Mrs. Cruikshank as being the owner of the property described as follows :
“ ‘That the said Mrs. Cruikshank is hereby recognized to be the owner of said Section 79 embraced in the lower part of what was known as Woodlawn Plantation, and being all that portion of said Section 79 falling to Lot 2 in the act of partition of the said Woodlawn Plantation in the estate of S. W. Gordon dated February 11, 1868, and filed and recorded February 24, 1868, in Conveyance Book “B”, page 135 in the office of the Recorder of the Parish of Rapides, and being all that portion of said Section 79 lying below the lane and the continuation of the lane, dividing Lot No. 1 and Lot No. 2 of said Woodlawn Plantation, which lane now divides the property of the said Robert Kincaid and the property of the said Mrs. Alice Cordelia Cruikshank.’
“The said compromise judgment further recognizes Robert Kincaid as the owner of the remainder of Section 79 and also as a further consideration falling to Robert Kin-caid conveyed to him all of the pine timber on that portion of Section 79 of which Mrs. Cruikshank was recognized as owner, with the right to remove said timber within a period of five years. As a further consideration for this compromise judgment Robert Kincaid received the sum of $50.00 in cash.
“It is therefore inescapable that regardless of the location of the old Bringhurst line or any other instruments or evidence of the location of the boundary line which previously existed between these properties, the compromise judgment entered into between Mrs. Cruikshank and Robert Kin- *213 caid in 1915 definitely established by contract between these two parties the location of this line.
“There is no question but what the lane referred to in the compromise judgment is the road shown on Daigre’s plat marked P-8 and filed in evidence. Of course Daigre’s plat does not show the road continuing on north to Bayou Rapides but from the descriptions already referred to we know that the lane between these properties ran straight all the way to Bayou Rapides on the front. It may be that this lane or road did not exactly follow the old Bringhurst line, which according to Bring-liurst’s survey ran on a bearing of north 29 degrees west, but regardless of that possibility this road or lane was accepted by Mrs. Cruikshank and Robert Kincaid as being the dividing line between their properties in the compromise judgment entered into between them in 1915. Their successors in title are of course bound by this •contract and agreement.
“All of the witnesses, including Mr. William Belgard, Mr. J. A. Cruikshank, Mr. Andries and even the defendant himself -concede that on the cultivated land on the front the fence which runs along the east side of the road or lane is the boundary line between the properties. All of the witnesses concede that the road or lane was donated by Mr. Belgard or his predecessors in title and that the road or lane is therefore entirely on the old Belgard property and is not on the Cruikshank property. This being true, all that it is actually necessary to do to determine the boundary 'line between these properties according to the compromise agreement entered into between Mrs. Cruikshank and Robert Kincaid in 1915 is to start on the north end of this road or lane and project this fence line in ■a southerly direction across Kincaid canal to the rear of Section 79. This is in effect what Mr. L. J. Daigre has done in his plat -of a survey made by him in 1957. It is noteworthy that the line run by Daigre fits almost exactly the descriptions which were rtaken from the old Bringhurst survey which was made in 1892. Bringhurst’s line and Daigre’s line were both run by beginning at the southwest corner of Section 79, Township 4 North, Range 2 West which is marked by a buggy axle on Daigre’s plat marked P-8 and filed in evidence. From this point of beginning at the southwest corner of Section 79 Bringhurst ran thence east 30.94 chains; thence north 39 degrees 30 minutes east 2.75 chains and thence north 29 degrees west 148.60 chains to the bank of Bayou Rapides. From this same point of beginning, Daigre ran north 89 degrees 30 minutes east a distance of 31.03 chains and thence north 38 degrees 30 minutes east a distance of 2.75 chains and thence north 29 degrees 22 minutes west along the boundary line between the properties in question. There is a slight variation in distances and calls between the Bringhurst line and the Daigre line, but, as previously stated, the Daigre line must be accepted in preference to the Bringhurst line by reason of the compromise judgment entered into between Mrs. Cruikshank and Robert Kin-caid in 1915. According to his plat of survey Daigre’s line does follow the lane and the continuation of the lane which is recognized by all parties as being the dividing line between the properties on the cultivated portions of these lines north of Kincaid canal.
“It is noteworthy that the defendant has not employed any surveyors to try to establish this boundary line according to his contentions in these proceedings. Apparently the defendant’s first contention is that the Daigre line does not conform to the old Bringhurst line, which defendant contends he has established by the testimony of Mr. William Belgard and others who are familiar with the location of this old Bringhurst line on the ground. As has been previously stated in this opinion, this contention by the defendant cannot prevail because the compromise agreement entered into between Mrs. Cruikshank and Robert Kincaid in 1915 definitely establishes the dividing line between these properties as being a straight line running from Bayou *214 Rapides on the front along the lane or road and a continuation of the lane or road to the south line of Section 79 in the rear.
“It is the next contention of the defendant that the compromise agreement entered into between Mrs. Cruikshank and Robert Kincaid in 1915 did not intend that the lane and the continuation of the lane run any further than Kincaid canal. This argument has no merit. The compromise judgment shows without any question that the principal matter in dispute was the ownership of the pine timber land located in Section 79 south of Kincaid Canal and the principal purpose and intention of the compromise agreement was to fix the line between these properties south of Kincaid canal. Furthermore a literal reading of the compromise agreement states clearly that Mrs. Cruikshank is recognized as the owner of all of that portion of Section 79 which lies below the lane and the continuation of the lane. No mention is made in the compromise agreement of the boundary line agreed to stopping at Kincaid Canal. We must of course accept the literal reading of this compromise judgment and cannot add to it language which is not contained therein so as to limit its effect.
“The defendant has also made an argument which goes back to the original partition amongst the heirs of Smith W. Gordon made in 1868. Defendant contends that the acreage contained in Lot 1 of this partition was considerably more than the acreage contained in Lot 2 because Lot 2 included also the summer, home, a steam engine, and a lot or lots in the City of Alexandria. The obvious answer to this contention is also the compromise agreement which was entered into between Mrs. Cruikshank and Robert Kincaid in 1915 in which they finally settled the location of this boundary line. In this compromise agreement Robert Kincaid is shown to have received valuable considerations for whatever rights he might have thought he was relinquishing at the time. Furthermore even the Bringhurst survey - which was made in 1892 shows that a dividing line between Lot 1 and Lot 2 was almost if not exactly the same line as was surveyed by Daigre in 1957.
“Defendant contends that under his chain of title he is actually the owner of all of Section 79 located south of Kincaid Canal. The most impressive answer to this argument is of course that even the old Bringhurst line ran straight all the way from Bayou Rapides on the front to the south line of Section 79 and divided Section 79 south of Kincaid canal into two approximately equal portions.
“For the reasons hereinabove set forth it is therefore the opinion of the Court that there should be judgment herein in favor of the plaintiff, Mrs. Alice Cordelia Cruikshank, and against the defendant, J. Vance Thompson, recognizing the boundary line between their respective properties as being that shown on the plat of a survey made by L. J. Daigre in 1957 and identified as plaintiff’s exhibit No. 8 in the record of these proceedings.
“As to the amount of sand which was removed from plaintiff’s land, Mr. William J. Roundtree, project engineer for the Department of Highways of the State of Louisiana, estimated a total of 13,211 cubic yards of sand were removed from this pit. Mr. Roundtree was shown the location of the Daigre line on the ground and he calculated that 9,070 cubic yards of sand were removed from the Cruikshank land. The value of this sand is definitely fixed by the contract in which the defendant, J. Vance Thompson, sold to L. H. Bossier, Inc., the sand in question for 10 cents a cubic yard.
“The plaintiff has not attempted to prove-damages for trespass and slander of title- and this portion of plaintiff’s demand must therefore be denied.
“For the reasons hereinabove set forth it is therefore the opinion of the Court that, there should be judgment herein in favor of the plaintiff, Mrs. Alice Cordelia Cruikshank, and against the defendants, L. IT. Bossier, Inc., and J. Vance Thompson, im *215 solido, for the sum of $907, together with legal interest thereon from date of judicial demand until paid and all costs of these proceedings.”
For the reasons herein assigned, the judgment of the district court is affirmed. Costs to be paid by defendants.
Affirmed.
On Application for Rehearing.
En Bank. Rehearing denied.
CULPEPPER, J., recused.